FILED
UNITED STATES DISTRICT COURT
ROSWELL, NEW MEXICO

APR 23 2024

MITCHELL R. ELFERS
CLERK OF COURT

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>Tevon Wayne Davis COBBS<br><br>*Defendant(s)* | Case No. 24-mj-593 |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **February 8 and 16, 2024** in the county of **Lea** in the District of **New Mexico**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 922(o)(1) | Possession and transfer of a machinegun (February 8 and 16, 2024) |
| Title 26 U.S.C. § 5861(d) | Possession of an unregistered NFA firearm (February 8 and 16, 2024) |
| Title 26 U.S.C. § 5861(i) | Possession of NFA firearm without serial number (February 8 and 16, 2024) |
| Title 26 U.S.C. § 5861(e) | Illegal transfer of NFA firearm (February 8 and 16, 2024) |

This criminal complaint is based on these facts:

See Affidavit of Eric Livengood/ATF/Special Agent, attached

☑ Continued on the attached sheet.

ERIC LIVENGOOD
Digitally signed by ERIC LIVENGOOD
Date: 2024.04.22 17:28:10 -06'00'

*Complainant's signature*

Special Agent Eric Livengood - ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at **1:32** a.m/**p.m**

Date: **April 23, 2024**

*Judge's signature*

City and state: **Roswell, New Mexico**     Barbara Evans, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Eric Livengood, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of a criminal complaint that on or about February 8, 2024, and February 16, 2024, in Lea County, New Mexico, Tevon Wayne Davis Cobbs (date of birth July 6, 2001):

- Possessed and transferred a machinegun, as defined in Title 26, United States Code, Section 5845(b), while not under the authority of, United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect (a machinegun lawfully possessed before May 19, 1986), in violation of Title 18, United States Code, Section 922(o)(1).

- Possessed a National Firearms Act (hereinafter 'NFA') controlled firearm which was not registered to him in the National Firearms Registration and Transfer Record (hereinafter 'NFRTR'), in violation of Title 26, United States Code, Section 5861(d).

- Possessed a NFA controlled firearm which was not identified by a serial number as required by Title 26, United States Code, Chapter 53 (Machine Guns, Destructive Devices, and Certain Other Firearms), in violation of Title 26, United States Code, Section 5861(i).

- Transferred a NFA controlled firearm in violation of the provisions of Title 26, United States Code, Chapter 53 (Machine Guns, Destructive Devices, and Certain Other Firearms), in violation of Title 26, United States Code, Section 5861(e).

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since October of 2019. I am currently assigned to the Roswell, New Mexico Satellite Office, in the Phoenix Field Division of ATF. My training includes twenty-seven (27) weeks of Criminal Investigator and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. During this training, I received instruction relating to federal law violations, various investigation strategies, evidence collection, interview techniques, and search and seizure. As a Special Agent with ATF, part of my duties and responsibilities include conducting criminal investigations for possible violations of federal firearms, explosives, and arson laws. Previously, as a Richmond, Virginia, sworn police officer and detective, I conducted a wide range of criminal investigations including, but not limited to firearms violations, narcotics violations, robbery, burglary, embezzlement, sexual assault, rape, aggravated assault, and homicide. Through my training, experience, and discussions with other law enforcement officers who have experience in similar investigations, I have become familiar with the tactics and methods used by criminals engaging in various violations of law. As a federal agent, I am authorized to investigate violations of the laws of the United States, and as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

3. The information contained herein is based upon my own investigation as well as information supplied to me by other duly sworn law enforcement officers, and does not contain all information known by me, only facts for consideration of probable cause.

## Applicable Law

4. Title 18, United States Code, Section 921(a)(3): For the purposes the listed violations, a "firearm" is defined as:

(A). any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;
(B). the frame or receiver of any such weapon;
(C). any firearm muffler or firearm silencer, or
(D). any destructive device. Such term does not include an antique firearm.

5. The National Firearms Registration and Transfer Record (NFRTR) is the central registry of all National Firearms Act (NFA) controlled firearms in the United States which are not in the possession of the United States Government. NFA controlled firearms include; machineguns, short-barreled shotguns, short-barreled rifles, firearm silencers, destructive devices, and "any other weapon" category (examples include; firearms concealed as everyday objects – cane gun, knife gun, pen gun, pistols of revolvers with a smooth bore designed to fire shotgun ammunition or firearms with combination rifle/shotgun barrels more than 12 inches but less than 18 inches). As outlined in Title 26, United States Code, Section 5841(a), the registry includes (1) identification of the firearm; (2) date of registration; and (3) identification and address of person entitled to possession of the firearm.

6. Title 26, United States Code, Section 5845(b): Definition of a 'machinegun' (NFA controlled firearm) – The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun,

and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

7.      Firearm Owners' Protection Act. In 1986, this Act amended the National Firearms Act (NFA) definition of "silencer" by adding combinations of parts for silencers and any part intended for use in the assembly or fabrication of a silencer. The Act also amended the GCA to prohibit the transfer or possession of machineguns. Exceptions were made for transfers of machineguns to, or possession of machineguns by, government agencies, and those lawfully possessed before the effective date of the prohibition, May 19, 1986.

8.      A Federal Firearms Licensee (FFL) is an individual who is licensed to engage in the business of manufacturing, importing and /or dealing in firearms. These individuals must be licensed by ATF to engage in the business of firearms, as outlined in Title 18, United States Code, Section 923(a through l).

## Probable Cause

9.      I am currently investigating the illegal possession and sale of NFA controlled firearms. I have identified Tevon Wayne Davis Cobbs (hereinafter "Cobbs") as the suspect of this investigation.

10.     On February 1, 2024, I spoke with a Carlsbad Police Department (CPD) Detective over the phone regarding several shootings that had taken place in Carlsbad, New Mexico, involving juvenile suspects. The CPD Detective stated that during a review of one of the juvenile shooting suspect's phones, investigators located conversations with a contact labeled, "TMURDA" with assigned cellular phone number: 806-841-3354. In the conversation,

investigators observed language indicating the sale of automatic conversion devices for Glock style semi-automatic pistols, commonly known as "Glock switches" (hereinafter 'Glock switch(es)'). Once installed, these small devices convert semi-automatic pistols into automatic pistols or 'machineguns' capable of firing all available ammunition loaded into the pistol with one pull of the trigger.

11. After conducting research in open-source and law enforcement databases, investigators associated that phone number with Cobbs. Investigators discovered that Cobbs had an address in Hobbs, New Mexico and worked at a vehicle detailing shop in Hobbs, New Mexico.

12. Members of the Lea County Drug Task Force (LCDTF) were able to identify Cobbs' Facebook profile with profile name, "Tee Swoo" (as of February 7, 2024). LCDTF members contacted Cobbs through Facebook in an undercover capacity and began conversation with Cobbs regarding the sale of a Glock switch. Cobbs confirmed that he had one Glock switch and would sell it. The proposed meeting for the sale of one Glock switch to LCDTF by Cobbs was set for February 8, 2024. I researched Cobbs in open-source and law enforcement databases and found he had no known criminal history.

13. On February 8, 2024, two (2) LCDTF agents, while acting in an undercover capacity (UC), met with Cobbs in the parking lot of his place of employment. LCDTF UC agents utilized covert audio and video recording devices to capture the interaction. UC agents arrived in the parking lot at approximately 2:53 PM. Shortly after arrival, Cobbs exited the business, walked through the parking lot, and entered the UC vehicle with UC agents. UC agents

5

positively recognized Cobbs from his (Department of Motor Vehicles) DMV license photograph and other photographs displayed on his Facebook social media account.

14. Cobbs asked UC agents if they shot "fully automatics" and what kind of guns they had. Cobbs stated he did not have the proposed Glock switch currently, but he had to run down the street to get it. Cobbs asked if UC agents knew how to install the Glock switch and then began to explain that the Glock switch consisted of three (3) pieces. Cobbs re-stated that he did not have it, but it was at his house. Cobbs stated he only lived five (5) minutes away but had to finish working on a vehicle before he could get it from his house. Cobbs also offered to put the Glock switch on the UC agents' firearm for them. Cobbs mentioned that a lot of people were getting shot with fully automatics now. Cobbs re-stated that he would go to his house and get the Glock switch and instructed UC agents to return to the shop in one (1) hour to purchase the Glock switch from him. Cobbs exited the UC vehicle and UC agents departed from the parking lot at approximately 3:01 PM.

15. UC agents returned to Cobbs' place of employment at approximately 5:33 PM. A short time later, Cobbs arrived in the parking lot in a white Chrysler 300 sedan. Cobbs parked next to the UC vehicle, exited his vehicle, and entered the UC vehicle with UC agents. Cobbs asked if UC agents were police and that if they were, they might as well take him to jail now. After UC agents assured Cobbs that they were not police, Cobbs provided UC agents with one (1) silver in color, metallic, Glock switch that was in three (3) pieces in a plastic bag. Cobbs told UC agents "I slap them bitches on quick", referring to his ability to install Glock switches on firearms. UC agents provided $500 in cash to Cobbs as payment for the Glock switch and took possession of the Glock switch. UC agents asked Cobbs if he would have any more in the future,

to which Cobbs replied he would and would sell them for $350 each. Cobbs then stated he did currently have more Glock switches in his possession, but they were for himself. Cobbs then described some of the firearms he owned and showed UC agents videos of himself on his cellular phone, shooting weapons converted to automatic firing capability. Cobbs mentioned he had been doing "this" for three (3) or four (4) years, referring to his length of experience with automatic firearms and possibly referring to his length of experience concerning the sales of automatic weapons / automatic conversions devices for firearms. Cobbs stated he also had automatic conversion devices for 'ArmaLite Rifles' (AR) style rifles.

16. Cobbs showed UC agents photographs on his cellular phone of firearms with Glock switches attached. Cobbs stated he also had "flat back switches" he gets that are "invisible". Cobbs was referring to the inability to detect that an automatic conversion switching mechanism had been attached to the firearms they were installed on, because of their "flat back" that appears as a conventional flat rear slide plate that is standard on Glock style pistols. UC agents noted that Cobbs had two (2) cellular phones on his person during the interaction. UC agents asked Cobbs if he had any suppressors (silencers), Cobbs replied that he had one (1). UC agents expressed interest in buying a silencer and stated to Cobbs they were "not about to wait fucking 9 months for one." Cobbs replied, "that's what I said, I'm not waitin' that shit bro!" This statement was in reference to the waiting period to obtain a silencer (or any NFA controlled firearm) after submitting proper paperwork and an application to ATF. Typical wait times for ATF to approve and return applications/tax stamps for NFA controlled weapons varies and usually takes multiple months. This is part of the legal route to owning/possessing NFA controlled weapons. Cobbs parted ways with UC agents and exited the UC vehicle. UC agents departed the parking lot at approximately 5:52 PM.



*(First controlled purchase – One (1) Glock switch with no markings, purchased on February 8, 2024, disassembled into three (3) pieces)*

17. LCDTF agents, in a UC capacity, successfully set up another meeting date of February 16, 2024, for the purchase of two (2) Glock switches and one (1) silencer from COBBS for $1,300.

18. On February 16, 2024, LCDTF agents, while acting in a UC capacity, met with Cobbs in the parking lot of his place of employment. Once again, LCDTF UC agents utilized covert audio and video recording devices to capture the interaction. UC agents arrived in the parking lot at approximately 11:38 AM. Shortly after arrival, Cobbs exited the business, walked through the parking lot, and entered the UC vehicle with UC agents. UC agents positively recognized Cobbs from their previous interaction with him.

19. Cobbs immediately handed UC agents two (2) Glock switches and one (1) silencer. Cobbs stated that he believed the silencer would accommodate calibers: 5.56, .300, and 7.62. Cobbs then exited the UC vehicle for a short time (approximately 30 seconds) to attend to a customer. Cobbs re-entered the UC vehicle and stated he placed an order for more "switches" from his source. Cobbs stated he placed orders for Glock switches with a "guy" and he didn't know where the "guy" was from, but he shipped the Glock switches to him (Cobbs). Cobbs

8

counted and took possession of the UC agents' $1,300 cash in exchange for the three (3) items. Cobbs then confirmed he had another "switch" at his residence he would be willing to sell UC agents. Cobbs then stated he sold his "homie" one (referring to a Glock switch) and his "homie" got his car stolen with the Glock switch inside, Cobbs proceeded to criticize his "homie" and rhetorically asked, "Why the fuck would you leave a switch in your car, bro… what the fuck?" UC agents engaged in conversation with Cobbs about Glock switches that are flush (hidden from plain sight when installed on a firearm, Cobbs previously referred to these type of automatic conversion devices as "flat back switches").

20.     Cobbs stated these Glock switches are "good to go somewhere with." Cobbs stated that even if police interact with you, they only run the serial number serial number of the firearm (insinuating police would not be able to discern between a regular semi-automatic firearm and a firearm with a flush Glock switch installed, making it a fully automatic firearm). Cobbs then warned UC agents, "the buttons (referring to the type of Glock switches he sold UC agents, that protrude from the rear slide of the firearm), you wanna keep them bitches put up (hidden)". Cobbs then stated he had a "button" (Glock switch) on him currently and it was installed on a 10mm caliber firearm. Cobbs also stated he had a "flat one" installed on a different Glock firearm and that he would ride with that sometimes. Cobbs then stated to UC agents he had "it" (referring to a firearm with a Glock switch installed) in his car and offered to go get "it" to show UC agents. UC agents advised that they had to leave as soon as Cobbs offered to bring his firearm (with installed Glock switch) into their vehicle from his car. Cobbs and UC agents said their goodbyes and Cobbs exited the UC vehicle. Cobbs walked back into his place of employment and UC agents left the area at approximately 11:50 AM.

9

21. I examined the two (2) Glock switches and one (1) silencer directly after the UC purchase. I noted that the two (2) newly purchased Glock switches appeared identical to the first purchased Glock switch in size and material. No serial numbers or markings/engravings of any kind were located on any of the purchased items (three (3) Glock switches and one (1) silencer).



*(Second controlled purchase - Two (2) Glock switches with no markings, purchased on February 16, 2024, each disassembled into three (3) pieces)*

### Glock Conversion Device Background

22. Glock conversion devices are parts of a combination of parts, designed and intended for use in converting semiautomatic Glock style pistols into machineguns; therefore, it is a "machinegun" as defined in Title 26, United States Code, Section 5845(b). Glock conversion devices are also considered post-May 19, 1986 machineguns and may only lawfully be possessed by properly licensed Federal Firearms Licensees who have paid the appropriate Special Occupational Tax (SOT) required of those in the business of manufacturing, importing, or dealing in National Firearms Act (NFA) firearms. These devices are commonly referred to as "Glock switches", "Glock auto sears", or several other developed slang terms.

23. The conversion process is fast, simple, and requires no technical expertise. Conversion involves the removal of the original rear slide cover plate and replacing it with the

conversion device. These conversion devices can be made of metal, plastic, or a combination of both. In some cases, the conversion devices may contain a selector switch, rod, or pin, allowing the user to select between semiautomatic and automatic firing capabilities. Also, the conversion device may not have a selector switch and be simply attached to the existing slide cover plate. The device functions by using the "leg" portion of the device to push down the internal trigger-bar and take it out of engagement with the firing pin as the slide returns to the closed position (after being fired). This now allows the firing pin to travel forward, striking the primer of the next loaded round of ammunition and firing it. When the trigger is depressed by the user, this device enables a host pistol to shoot automatically more than one shot, without manually reloading, by a single function or pull of the trigger. Conversion of a semiautomatic pistol to automatic with these types of conversion devices will result in a rate-of-fire of approximately 1,200 round per minute. Exemplar images below:











## ATF Firearms Technology Criminal Branch Determinations and Classifications

24. After reviewing the items purchased from Cobbs, I consulted with firearm experts at ATF's Firearm Technology Criminal Branch (FTCB) to determine the classifications and legality of the purchased items.

25. ATF's Firearm Technology Criminal Branch (FTCB) is responsible for responding to and acting upon law enforcement agency requests to test, evaluate, classify, and provide training on the subject of firearms and ammunition. ATF FTCB provides detailed technical reports for use in criminal prosecutions and expert witness testimony in federal and state courts. The Subject Matter Experts (SME) within ATF FTCB assist in enforcement operations, provide firearm identification, and conduct weapon testing, evaluation, and classification. ATF FTCB provides technical support and guidance on aspects of the Gun Control Act (GCA) of 1968, the National Firearms Act (NFA) of 1934, the Arms Export Control Act of 1976, and other related statutes and regulations.

26.     ATF FTCB reviewed photographs of the purchased items. After review, ATF FTCB determined these type of Glock switches in current observable condition, were firearms, as defined in Title 26, Untied States Code, Section 5845(a)(6) (which relies on Title 18, United States Code, Section 921(a)(23) definition) and further classified them as a 'machineguns', as defined in Title 26, United States Code, Section 5845(b), due to this item's design being able to shoot, or being readily restorable to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger or the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

27.     It is important to note that ATF FTCB does not issue "official" determinations on items without being able to physically inspect/test the item in a laboratory setting. The above determinations would be considered "preliminary" determinations made by subject matter experts at ATF FTCB, based on all available evidence at hand.

**Federal Licensing System Query**

28.     The Federal Licensing System (FLS) is ATF's searchable database of Federal Firearms License (FFL) holders. FLS contains identifying information of a licensee, their current license status, and other responsible parties associated with the license. ATF has queried FLS for Cobbs and determined he does not possess a federal license (FFL status) to engage in the business of manufacturing, importing, or dealing in any type of firearms, including NFA controlled firearms.

### National Firearms Registration and Transfer Record Query

29. The National Firearm Registry and Transfer Record (NFRTR) is the central registry of all firearms controlled by The National Firearms Act (NFA), to include all destructive devices, machineguns, silencers, short-barreled rifles, and short-barreled shotguns, in the U.S. which are not in the possession or under the control of the U.S. Government. The registry includes (1) the identification of the firearm, (2) date of registration, and (3) identification and address of the person entitled to possession of the firearm (the person to whom the firearm is registered).

30. Cobbs was queried in the NFRTR database and was not found to have any NFA controlled weapons registered to himself.

### FFLs and Proper Firearm Transfer Forms

31. Based on my training and experience, I know that a Federal Firearms Licensee ("FFL") is a business licensed under Chapter 44 of Title 18, United States Code, to engage in the business of dealing in firearms. Only FFLs (of various license options) are authorized by federal law to engage in the business of manufacturing, importing, or dealing in firearms. When a consumer buys a firearm from an FFL, that buyer must fill out an ATF Firearms Transaction Record (ATF Form 4473), which asks for and requires the buyer's true name, current residential address, and other identifying information. The information on ATF Form 4473 makes it possible to trace a firearm back to its retail purchaser. FFLs are required by Chapter 44 of Title 18, United States Code, to maintain these forms in their records.

32. FFLs are required by law to record the acquisition and disposition of every firearm supplied to the FFL in an acquisition and disposition ("A&D") record and to maintain

15

the A&D record at their licensed business premises. Specifically, for each firearm that is taken into inventory, the FFL is required to record the make, model, and serial number of the firearm, the date of acquisition, the name and address (or federal firearms license number) of the person from whom the firearm is acquired, the date on which the firearm was disposed of, and the name and address (or federal firearms license number or Form 4473 transaction number) of the person to whom the firearm is transferred.

33. ATF has a program to "trace" firearms recovered in crimes through the ATF National Tracing Center. This process entails tracing the firearm recovered in a crime, using the serial number, back to the original purchaser, whose information is recorded on ATF Form 4473, upon transfer of the firearm. Tracing a firearm recovered in a crime is not possible when an individual has engaged in the business of selling that firearm without holding a FFL and/or has not followed the rules set forth in recording a transferee's/purchaser's information on ATF Form 4473. Also, if there is no serial number associated to the purchased firearms, ATF cannot trace the firearm. By avoiding the process of recording a firearm purchaser's information for record keeping and criminal background checks, it enables individuals who may not have been able to legally purchase a firearm to do so and do so with anonymity. This is advantageous for individuals seeking to possess or use firearms in criminal activity due to the inability of law enforcement to trace the firearm back to the individual.

## Summary

34. Based on the facts uncovered in this investigation, as well as previous training and experience participating in similar investigations, I believe Cobbs has previously, is currently, and will continue to illegally possess, transfer, and sell NFA controlled firearms, without serial

numbers, that are not properly registered in NFRTR. I believe this activity will continue to enable individuals to purchase 'machineguns' and other NFA controlled weapons from Cobbs while circumventing the prohibited status regarding the possession of these firearms and/or using these firearms in criminal activity with anonymity. I believe Cobbs will continue to source these type of NFA controlled items and continue to sell them to individuals wishing to circumvent NFA rules and regulations, individuals wishing to remain anonymous, and individuals seeking these advantages for the purpose of committing criminal activities while hindering law enforcement's capability to trace these illegally possessed items back to a source. I believe this situation financially benefits Cobbs, and situationally benefits individuals engaged in the illegal purchase, possession, and use of NFA controlled firearms.

35. It appears that Cobbs displays knowledge in the areas of firearms, firearm parts/components, firearm functionality, and general firearm regulations as observed in his statements to UC agents. From reviewing the recorded interactions between Cobbs and UC agents, I believe Cobbs has knowledge of how these conversion devices work, how to install them, the difference they make in firing capabilities of firearms (semiautomatic versus automatic), and knows they are illegal. Furthermore, I believe Cobbs has knowledge of the necessary legal route of apply for and possess NFA controlled weapons.

## Conclusion

34. Based on the aforementioned facts, I submit that probable cause exists to believe that Tevon Wayne Davis Cobbs violated:

- Title 18, United States Code, Section 922(o)(1), which makes it a crime for any person to possess a 'machinegun' while not under the authority of, United States

or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect (a machinegun lawfully possessed before May 19, 1986).

- Title 26, United States Code, Section 5861(d), which makes it a crime for any person to possess a NFA controlled firearm which was not registered to him in the NFRTR.

- Title 26, United States Code, Section 5861(i), which makes it a crime for any person to possess a NFA controlled firearm which is not identified by a serial number as required by Title 26, United States Code, Chapter 53 (Machine Guns, Destructive Devices, and Certain Other Firearms).

- Title 26, United States Code, Section 5861(e), which makes it crime for any person to transfer a NFA controlled firearm in violation of the provisions of Title 26, United States Code, Chapter 53 (Machine Guns, Destructive Devices, and Certain Other Firearms).

Prosecution of Tevon Cobbs was approved by Assistant United States Attorney Ryan Ellison.

Respectfully submitted,

_____
Eric Livengood
ATF Special Agent

Subscribed and sworn to before me on April 23, 2024 , 2024:

_____
The Honorable Barbara S. Evans
United States Magistrate Judge